IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DELAIN SCOTT, INDIVIDUALLY § <br> AND AS NEXT FRIEND FOR K.A., § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> DOREL JUVENILE GROUP, INC., § <br> AND S.C. JOHNSON & SON, INC., § <br> § <br> Defendants. § | Civil Action No. 3:09-CV-0799-K |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Dorel Juvenile Group, Inc. ("Dorel")'s Motion for Summary Judgment, filed July 27, 2010, and Defendant Dorel Juvenile Group, Inc.'s Objections to Evidence Submitted in Support of Plaintiff's Response to Defendant Dorel Juvenile Group, Inc.'s Motion for Summary Judgment, filed September 2, 2010. After consideration of the motion, response, reply, summary judgment record, and the applicable law, the court **grants** Dorel's Motion for Summary Judgment. Dorel's objections related to certain portions of Bobbi Scott's declaration are **sustained,** and the remaining objections are **overruled.**

**I.    Factual and Procedural Background**

The facts set forth herein are largely undisputed, however, where they are disputed they are presented in the light most favorable to Plaintiff. This product

liability case arises from an accident that occurred on April 12, 2007. Plaintiff DeLain Scott and her mother Bobbie Scott were preparing dinner in the kitchen of Bobbie Scott's home. K.A., Plaintiff's then-11 month old daughter, was also in the kitchen. Plaintiff and Bobbie Scott both lost sight of K.A. for 30-60 seconds, and then discovered her foaming at the mouth, with an open container of Drano Kitchen Crystals on the floor beside her. Because she ingested the crystals, K.A. has suffered severe and permanent injuries to her mouth and pharyngeal region.

Prior to the accident, Bobbie Scott installed a "Safety 1st" brand spring latch manufactured by Dorel on the kitchen cabinet where the Drano Crystals were stored. The Safety 1st latches can be used with or without a catching device. Scott installed the latch without using the catching device included with it. Scott's testimony is that she purchased the latch approximately five or six months before the accident. Bobbie Scott installed the latch without difficulty, and states that it seemed to be working properly up until the time of the accident.

Bobbie Scott testified in her deposition that she did not read the instructions or warnings on the back of the package prior to installing the latch, because she thought she could just figure out how to install it on her own. In a subsequently-filed declaration, Bobbie Scott's story is altered. She still acknowledges that she did not read the instructions and warnings in 2006, but states that she "believes" she read the warnings on a package of latches she installed on the cabinets of a prior residence in

2

2002. Although Bobbie Scott states that she was looking to purchase the same latches when she went shopping for them in 2006, her declaration does not establish that the latches she purchased in 2002 actually were the same "Safety 1st" latches she purchased and installed in 2006. Moreover, the court finds her later-filed declaration to be inconsistent with her previous deposition testimony. In her deposition she merely stated that she did not read the instructions and warnings in 2006 because she thought she could just figure out how to install the latches. She did not state that she did not read the instructions and warnings because she had already read them in 2002.

The warnings that Bobbie Scott did not read prior to installing the latches at issue in 2006 state that: the spring latch is only a deterrent, and not a substitute for adult supervision; the latch should be discarded when a child becomes old enough to defeat it; and that toxic and dangerous substances as well as sharp edges or pointed objects should always be placed high up or totally inaccessible to small children. Bobbie Scott is not aware of any false representations or statements made to her by Dorel.

Neither Plaintiff nor Bobbie Scott had any problems with the functioning of the spring latch prior to the accident. They never saw K.A. operate the spring latch prior to that night, and believed at that time that she was incapable of doing so. On the night of the accident, no one saw K.A. operate or overcome the latch, and no witness saw her access the Drano crystals. Bobbie Scott discarded the latch following the accident. Therefore, the actual latch involved is not in evidence, and has not been examined by

any of the experts engaged by the parties in this case. Plaintiff's engineering expert, John Scates, is unable to testify with any degree of certainty how K.A. actually accessed the cabinet. However, he contends that the design of the latch system is defective because the upslope on the levers was too great, and because it can be installed without a catch piece. Although Scates offers additional opinions related to the use of the latches *with* a catch piece, it is undisputed that Bobbie Scott did not use a catch piece when she installed the latch at issue. Scates does not contend that the latch did not comply with relevant governmental standards.

Plaintiff brought suit in state court against Dorel and S.C. Johnson & Son, Inc. (the manufacturer of the Drano crystals) in April 2009, bringing claims against both Defendants individually and on behalf of K.A. Defendants eventually removed the case to this court, and Dorel now moves for summary judgment on all of Plaintiff's claims.

## II. Dorel's Objections to Plaintiff's Summary Judgment Evidence

Dorel has lodged numerous objections to Plaintiff's summary judgment evidence. Many of those objections are related to the lack of verification and authentication by Plaintiff of her summary judgment proof. Although the court previously denied Plaintiff's motion to supplement her summary judgment proof to provide the needed verifications, it now finds that the inclusion of this information in the summary judgment record does not alter the court's determinations regarding the viability of Plaintiff's claims against Dorel. Accordingly, the court hereby **vacates** its order denying

4

Plaintiff's Motion for Leave to file her second amended summary judgment response, and instead hereby orders that the motion is **granted.**

However, Dorel's objections regarding Bobbie Scott's inconsistent statements in her declaration are **sustained.** Finally, the court has reviewed the remaining evidentiary objections, and even if the court considers the evidence Dorel objects to, it reaches the same conclusions with respect to Dorel's summary judgment motion. The balance of Dorel's objections are **overruled.**

### III. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be

viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

IV. **Dorel's Motion for Summary Judgment**

In accordance with the above standards for summary judgment, Dorel asserts that there is no genuine issue of material fact whether Plaintiff should be allowed to recover on her claims against it, and thus Dorel is entitled to judgment as a matter of law. The court analyzes each of Plaintiff's claims as follows:

A. **Marketing Defect/Failure to Warn**

Plaintiff contends that Dorel failed to provide adequate warnings that the danger of storing hazardous chemicals in their cabinets is not completely eliminated by the use of its latches. Plaintiff also states that Dorel did not warn that when installed without a catch, the latches are not nearly as effective in preventing a child from gaining access to a cabinet as they are when they are installed using a catch piece.

"[A] marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use." *Wright v. Ford Motor Co.,* 508 F.3d 263, 274-75 (5th Cir. 2007), *citing Sims v. Washex Machinery Corp.,* 932 S.W.2d 559, 562 (Tex.App.-Houston [1st Dist.] 1995, no writ). To sustain a marketing defect claim, a plaintiff must show: 1) a risk of harm inherent in the product or which may arise from the intended or reasonably anticipated use of the product; 2) the product supplier

6

actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed; 3) the product contains a marketing defect; 4) the absence of a warning renders the product unreasonably dangerous to the ultimate user or consumer of the product; and 5) the failure to warn must constitute a causative nexus in the product user's injury. *Id.; see also USX Corp. v. Salinas,* 818 S.W.2d 473, 483-84 (Tex. App. – San Antonio 1991, writ denied).

Under Texas law, there is a presumption that an adequate warning would have been followed. *Wright,* 508 F.3d at 275. However, this presumption disappears if evidence is presented that the warning would not have been followed. *Id.* If such a showing is made, the burden then shifts back to the plaintiff to show that the warning would have been followed. *Id.; General Motors Corp. v. Saenz,* 873 S.W.2d 353, 358 (Tex. 1993). In this case, it is undisputed that Bobbie Scott did not read the instructions or warnings on the latch package. Her inconsistent and later-filed declaration that she read the relevant warnings on a different package of latches in 2002 will not allow Plaintiff to avert summary judgment. *See S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 496 (5th Cir. 1996) (party cannot defeat a motion for summary judgment by using an affidavit that impeaches, without explanation, sworn testimony); *Tremont LLC v. Halliburton Engergy Svcs., Inc.,* 696 F.Supp.2d 741, 760 n.17 (S.D. Tex. 2010) (rule against sham affidavits gives the court discretion, at the summary judgment stage, to disregard

7

affidavits that are inconsistent with prior deposition testimony, when the affiant does not account for the inconsistency).

Thus, the presumption that an adequate warning would have been followed disappears, and it becomes Plaintiff's burden to show that the warning she proposes would have been followed. Plaintiff cannot carry this burden because Bobbie Scott admits she did not read the warnings. Therefore, even if the alleged superior warning had been on the package, Plaintiff cannot show that it would have affected Bobbie Scott's conduct. Failure to read the warnings provided negates the causal link between the alleged inadequate warnings and the user's injury. *Foltz v. Smith & Wesson Corp.,* 2009 WL 2596598, *3, *citing Gillespie v. Century Prods. Co.,* 936 S.W.2d 50, 53 (Tex. App.-San Antonio 1996, no writ). The court must enter summary judgment on Plaintiff's marketing defect/failure to warn claim.

### B. Manufacturing Defect

Dorel next moves for summary judgment on Plaintiff's manufacturing defect claim. However, in the time since Dorel's filing of its summary judgment motion, Plaintiff has moved to amend her pleadings to drop this claim against Dorel. (*See* Docket No. 344). Although the court granted this motion in part on December 16, 2010 (Docket No. 383), it appears that Plaintiff never filed her Second Amended Complaint. Therefore, in an abundance of caution, the court will presume that this claim is still before it.

8

Plaintiff has made no response to Dorel's request for summary judgment, and has presented no evidence raising a material fact issue as to this claim. Accordingly, this claim is deemed abandoned, and the court will enter summary judgment for Dorel. *See Black v. Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir. 2006) (claim abandoned when plaintiff failed to defend it in response to motion to dismiss); *Scales v. Slater,* 181 F.3d 703, 708 n.5 (5th Cir. 1999) (plaintiff abandoned claim by failing to contest defendant's arguments for dismissal of that claim); *Thompson v. Exxon Mobil Corp.,* 344 F. Supp.2d 971, 976 (E.D. Tex. 2004) (where plaintiff only responded to defendant's summary judgment motion on two claims, remaining claims were deemed to have been abandoned).

### C. Design Defect

Plaintiff also brings a design defect claim, asserting that the design of Dorel's latches is defective because when they are installed without using a catch, they can be unlatched when as little as 2.75 pounds of force is applied. To prevail on her design defect claim, Plaintiff has the burden of showing that 1) the product was defectively designed so as to render it unreasonably dangerous; 2) a safer alternative design existed; and 3) the defect was a producing cause of the plaintiff's injury. Tex. Civ. Prac. & Rem. Code § 82.005(a); *Hernandez v. Tokai Corp.,* 2 S.W.3d 251, 255-56 (Tex. 1999); *Hunter v. Ford Motor Co.,* 305 S.W.3d 202, 207 (Tex. App. – Waco 2009, no pet. h.).

To determine whether a product is "unreasonably dangerous," courts apply a risk-utility analysis that requires consideration of the following factors:

> 1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use;
>
> 2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive;
>
> 3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs;
>
> 4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and
>
> 5) the expectations of the ordinary consumer.

*Timpte Indus. v. Gish,* 286 S.W.3d 306, 311 (Tex. 2009); *Transcontinental Ins. Co. v. Briggs Equip. Trust,* 321 S.W.3d 685, 698 (Tex. App. – Houston [14th. Dist.] 2010, no pet.). The risk-utility analysis does not operate in a vacuum, but rather in the context of the product's intended use and its intended users. *Id.* at 312. Although whether a product is defective is generally a question of fact, in the appropriate case, it may be determined as a matter of law. *Id.* Related to this element is the existence of a safer alternative design. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a)(1); *Timpte Indus.,* 286 S.W.3d at 311.

A "safer alternative design" means a product design other than the one actually used that in reasonable probability:

1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac. & Rem. Code § 82.005(b); *Hunter,* 305 S.W.3d at 207. Plaintiff is required to prove her design defect claim with expert testimony. *Hunter,* 305 S.W.3d at 207, *citing Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 583 (Tex. 2006).

### 1. Defect in Product Design

Dorel moves for summary judgment on this claim, first arguing that Scates' opinions regarding the design defect issue are inadmissible. Although the court excluded Scates' original report, it denied Dorel's motion to exclude Scates' supplemental expert report. Plaintiff further relies on her proffered expert testimony of Thomas Golden ("Golden") in support of her design defect claim. The court has determined that Golden's testing methodology is unreliable, and he has been excluded as an expert in this case. (Docket No. 359). Therefore, Plaintiff cannot use his expert report to create a genuine issue of material fact that would permit her to survive summary judgment.

Scates' primary contentions in support of his theory that the latch was defectively designed are that it can be installed without a catch, and that his testing showed that

11

when it is installed without a catch, it can be opened with as little as 2.75 pounds of force. Scates testified that it was not reasonable to conclude that K.A. accessed the cabinet by opening the latch through normal operation. Instead, Scates opines to two possible "access" scenarios. First, he states that K.A. may have "bypassed" the latch by falling onto or otherwise pulling down on the cabinet door, thus deflecting the door away from the spring latch entirely. However, Scates admits that he did no testing to determine how much force it would take to "bypass" the latch in this manner. Further, if the door was indeed "deflected" as described by Scates, so that the latch was completely bypassed, this sequence of events would not raise a genuine issue of material fact whether the *latch* was designed to operate properly, since the latch was bypassed, i.e., it did not have the opportunity to function properly.

Scates also asserts that it is a "possibility" that the latch did not hook properly onto the cabinet frame when used without a catch piece, and that K.A. could have just pulled on the cabinet door normally and opened it that way. Scates does not know how K.A. accessed the cabinet, and cannot testify with certainty to any probable scenario. In his deposition, Scates confirms that none of his testing was performed using the original latch because it was discarded following the accident. Although it is undisputed that Bobbie Scott installed that latch without a catch, because it was removed it is not possible after the fact to determine whether that particular installation was actually effective in preventing entry into the cabinet at various levels of force.

12

Dorel's design specification is that the latch should remain secured unless pulled with a force of 25 pounds or greater. Scates tested latches that remained on other cabinets in Bobbie Scott's home, as well as "exemplar" latches that were previously uninstalled and unused. The results of Scates' testing shows that those latches would open when pulled with a force of much less than 25 pounds. Accounting for the five factors encompassed by the risk-utility test, the court finds that there is a genuine issue of material fact whether the latch was unreasonably dangerous when installed without a catch, and thus whether it was defectively designed.

2. **Causation**

Dorel further argues that summary judgment is warranted on Plaintiff's design defect claim because she cannot set forth evidence to show a genuine issue of material fact regarding causation. Viewing Plaintiff's summary judgment proof in the light most favorable to her, the court assumes that K.A. was able to unlatch the cabinet that was secured by Dorel's latch. However, as Dorel points out, Plaintiff has supplied no evidence on summary judgment that raises a fact issue whether K.A. was capable of opening the cap on the Drano crystals package. Bobbie Scott testified that the Drano package was properly closed before she stored it in the kitchen cabinet. Plaintiff cites only to her deposition testimony regarding her recollection of K.A.'s abilities prior to the accident, but this testimony does not raise a genuine issue of material fact whether K.A.

13

was capable of opening the closed Drano container. For this reason, Plaintiff's design defect claim fails.

### 3. Safer Alternative Design

Finally, Dorel argues that Plaintiff cannot show there was a safer alternative design for the latch. Additionally, Dorel contends that even if Scates' opinion regarding alternative design is considered, the claim still fails due to clack of causation. The court agrees, and therefore does not reach this element of the claim. Plaintiff's design defect claim should be dismissed.

## D. Breach of Express and Implied Warranty

Plaintiff asserts that Dorel has breached express warranties made on the latch packaging, as well as its implied warranty of merchantability. Dorel seeks summary judgment on both of these claims.

### 1. Express Warranty

An express warranty may be established by a representation of an affirmation of fact, a promise, or a description. *See Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.,* 227 S.W.3d 876, 886 (Tex.App.-Dallas 2007, no pet.). To establish a breach of express warranty, a plaintiff must show that 1) the defendant sold products or services to the plaintiff; 2) the defendant made a representation to the plaintiff about the characteristics of the products or services by affirmation of fact, promise, or description; 3) the representation became part of the basis of the bargain; 4) the defendant breached the

14

warranty; and 5) the plaintiff suffered injury. *Id., citing Sw. Bell Tel. Co. v. FDP Corp.,* 811 S.W.2d 572, 576-77 & n. 3 (Tex.1991); *Mills v. Pate,* 225 S.W.3d 277, 289-90 (Tex.App.-El Paso 2006, no pet.); *Great Am. Prods. v. Permabond Int'l,* 94 S.W.3d 675, 681 (Tex.App.-Austin 2002, pet. denied). Texas courts still generally require privity between the buyer and seller for recovery on breach of express warranty. *See Keith v. Stolting,* 915 F.2d 996, 999 (5th Cir.1990)(construing Texas law); *United States Pipe & Foundry Co. v. City of Waco,* 130 Tex. 126, 108 S.W.2d 432, 434 (Tex.), *cert. denied,* 302 U.S. 749 (1937); *Lujan v. Tampo Mfg. Co.,* 825 S.W.2d 505, 511 (Tex.App.-El Paso 1992, no writ); *Texas Processed Plastics, Inc. v. Gray Enters., Inc.,* 592 S.W.2d 412, 415 (Tex.Civ.App.-Tyler 1979, no writ).

Here, it is undisputed that the latches were purchased by K.A.'s grandmother Bobbie Scott, not Plaintiff. Thus, the representations Plaintiff cites were made to Bobbie Scott, not Plaintiff, and became part of the bargain between Dorel and Bobbie Scott. There was no bargain between Plaintiff and Dorel for Plaintiff to base her breach of express warranty claims upon. Plaintiff's claim for breach of express warranty must be dismissed.

### 2. Implied Warranty

Plaintiff also brings a claim against Dorel for breach of the implied warranty of merchantability. A plaintiff asserting a breach of implied warranty of merchantability claim must show as follows: 1) that the product was defective as unfit for its purpose

15

because of a lack of what was required for adequacy; 2) that the alleged defect existed when the product left the defendant's possession; and 3) that the alleged defect proximately caused the injuries for which plaintiff seeks damages. *See Roventini v. Ocular Scis., Inc.,* 111 S.W.3d 719, 723 (Tex.App.-Houston [1st Dist.] 2003, no pet.) *(citing Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 444 (Tex.1989) and *Harris Packaging Corp. v. Baker Concrete Constr. Co .,* 982 S.W.2d 62, 66 (Tex.App.-Houston [1st Dist.] 1998, pet. denied)); *see also* Tex. Bus. & Com.Code. Ann. § 2.314.

Dorel argues that summary judgment on this claim is appropriate because Plaintiff has failed to raise a genuine issue of material fact whether its latch was a defective product, a finding that must be made to support this claim. The court agrees, and will enter summary judgment for Dorel on this cause of action.

### E. Negligence and Gross Negligence

Dorel further contends that the court must enter summary judgment on Plaintiff's negligence and gross negligence claims claim because they are premised on the existence of a safer alternative product design, a critical element of her product defect claims. *American Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 437 (Tex. 1997), *citing Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 384-85 (Tex. 1995). Plaintiff does not disagree that she must show a be able to show a product defect to prevail on her negligence claim. The court has already determined that Plaintiff cannot raise a genuine issue of material fact on elements of her marketing, manufacturing or design defect claims. Thus, the court

16

must enter summary judgment for Dorel on Plaintiff's negligence claim. Similarly, if Plaintiff cannot set forth a fact issue regarding negligence, she cannot meet her burden on the higher standard set for gross negligence. *See Sanders v. Herold,* 217 S.W.3d 11, 20 (Tex. App. – Houston [1st Dist.] 2006, no pet.) (conduct cannot be grossly negligent without being negligent); *Muniz v. State Farm Lloyds,* 974 S.W.2d 229, 237 (Tex. App. – San Antonio 1998, no pet) (party that is not liable for negligence cannot be liable for gross negligence). This claim also fails and must be dismissed on summary judgment.

### F. Loss of Earning Capacity

Plaintiff seeks damages for lost earning capacity, and Dorel argues on summary judgment that she cannot recover such damages because she has no admissible evidence of lost earning potential. The court does not reach this argument because it has determined that Dorel is entitled to summary judgment on all of Plaintiff's claims.

### V. Conclusion

For the reasons stated herein, Dorel's Motion for Summary Judgment is **granted,** and Plaintiff's claims against Dorel are hereby **dismissed with prejudice.** Judgment will be entered by separate document.

**SO ORDERED.**

Signed March 7th, 2011.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE